[Cite as *Roe v. Connolly, Hillyer & Ong*, 2024-Ohio-553.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| ZANE ROE | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2023 AP 06 0037 |
| CONNOLLY, HILLYER & ONG, et al. | : | |
| | : | |
| Defendants-Appellees | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2022 CM 09 0574

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 13, 2024

APPEARANCES:

For Plaintiff-Appellant

BARRY WARD
304 N.Cleveland Massillon Road
Akron, OH 44333

For Defendants-Appellees

HOLLY M. WILSON
200 Public Square
Suite 1200
Cleveland, OH 44114

*Delaney, P.J.*

{¶1}    Appellant appeals the May 23, 2023 judgment entry of the Tuscarawas County Court of Common Pleas granting appellees' motion for summary judgment.

*Facts & Procedural History*

{¶2}    Appellant Zane Roe contacted appellees Connolly, Hillyer & Ong, Inc. and Diana Dudgeon ("Dudgeon") for legal advice on November 4, 2019 regarding whether he could conduct a gaming and casino operation at the Northeast Urban Native American Cultural Center ("NUNACC") in Steubenville, Ohio.  On December 10, 2019, Dudgeon notified appellant by email that she had researched federal and state statutes and that he "should be good to go."  Appellant then began casino and gaming operations at the NUNACC.

{¶3}    On March 9, 2020, Dudgeon notified the city manager of Steubenville that, pursuant to state law, appellant's slot machines should be permitted in Steubenville, and that federal law permits Indian tribes to become engaged in licensed gaming activities. On May 28, 2020, the city attorney for Steubenville sent Dudgeon a letter stating the slot machines must be licensed by the Ohio Casino Control Commission, and the federal statute only permits tribes to operate casinos on Indian land.  Appellant avers he did not know of this letter until "later," but does not state what date he became aware of the letter.

{¶4}    The NUNACC was raided on October 20, 2020, and appellant was arrested. Appellant was indicted on March 3, 2021, for possession of heroin, operating an illegal unlicensed casino, and gambling.  Appellant hired criminal defense counsel in March of 2021 (other than appellees) to defend him.   He initially entered pleas of not guilty to the

charges.   However, appellant subsequently pled guilty to the charges on September 27, 2021.  The court issued a sentencing entry finding him guilty on September 30, 2021.

{¶5}    Appellant filed a complaint for legal malpractice on September 12, 2022 against appellees.  The complaint alleged as follows:  on March 9, 2020, Dudgeon sent a letter to the city manager of Steubenville as to the legality of appellant's business proposals on behalf of NUNACC regarding Indian gaming and casino operations; Dudgeon advised appellant it was legal and permissible for him to engage in Indian gaming and casino operations at NUNACC; appellant began to engage in certain gaming and casino operations; on May 28, 2020, Dudgeon received a letter from the law director of Steubenville advising her that her opinions were incorrect and appellant was not legally permitted to engage in gaming and casino operations; Dudgeon never relayed the letter to appellant; the Ohio Casino Control Commission executed a search warrant upon NUNACC and appellant's residence; appellant was later charged and indicted for illegal unlicensed casino gaming and gambling; appellant pled guilty on September 27, 2021; and appellant was convicted of unlicensed casino gaming and gambling.

{¶6}    Appellant alleged that, "at all times pertinent to this action, Defendants failed to exercise ordinary care in that they did not properly advise Plaintiff, Roe, as to the illegality of the gaming and casino operations at the NUNACC."  Further, appellant alleged that appellees breached their duty to exercise ordinary care with the knowledge, skill, and ability normally possessed and exercised by lawyers representing clients in gaming and casino operations which "resulted in criminal charges and convictions"; and, as a proximate cause of this breach, appellant suffered loss of economic harm, deprivation of

liberty, mental anguish, emotional and physical suffering, and was unable to maintain employment.

{¶7}    Appellees filed a motion for summary judgment on January 26, 2023, arguing that appellant's legal malpractice claim is barred by the one-year statute of limitations.  Appellees attached the following to their motion for summary judgment:  a certified copy of the criminal indictment filed against appellant for possession of heroin, illegal unlicensed casino gaming, and gambling dated March 3, 2021; a certified copy of the summons on indictment stating that appellant was personally served with the indictment on March 10, 2021; and a certified copy of the notice of appearance of counsel for appellant's criminal attorney dated March 17, 2021 and filed March 22, 2021.

{¶8}    Appellant filed a response to the motion for summary judgment on February 23, 2023, arguing the statute of limitations had not passed because the "cognizable event" was the conviction rather than the indictment.  Appellant attached his affidavit to a sur-reply to the motion for summary judgment.  Appellant averred the following:  he received an e-mail on December 10, 2019 from Dudgeon advising him he "should be good to go"; Dudgeon mailed a letter to the city manager of Steubenville on March 9, 2020 advising him the slot machines should be permitted; he operated casino and gaming operations until the NUNACC was raided by law enforcement and he was arrested on October 21, 2020; in March of 2021, he was indicted; in March of 2021, he hired attorneys from another firm to defend him with regard to the criminal charges; he had been advised by Dudgeon that it was legal and permissible for him on behalf of the NUNACC to engage in gaming and casino operations at NUNACC; based on this advice, he believed he had a valid defense to the criminal charges; he "later learned" about the letter from the law

director of Steubenville to Dudgeon dated May 28, 2020; Dudgeon never relayed or conveyed to him the letter she received on May 28, 2020; on September 27, 2021, when it became clear to him that he had no defense to the charged offenses, he pled guilty; and he first realized the advice he received from Dudgeon was wrong on September 27, 2021.

**{¶9}** The trial court issued a judgment entry on May 23, 2023 granting appellees' motion for summary judgment. The trial court found that either the raid and arrest in October, or the indictment in March of 2021, put appellant on notice of "injury related to his attorney's act." The trial court reasoned that a raid, arrest, indictment, and the need to hire criminal defense counsel would put an objective and reasonable person on notice that the prior attorney's advice was not correct, and prompt an investigation.

**{¶10}** Appellant appeals the May 23, 2023 judgment entry of the Tuscarawas County Court of Common Pleas, and assigns the following as error:

**{¶11}** "I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES BECAUSE GENUINE ISSUE OF MATERIAL FACT EXIST AS TO WHEN A COGNIZABLE EVENT OCCURRED THEREBY TRIGGERING THE STATUTE OF LIMITATIONS FOR APPELLANT TO HAVE FILED HIS COMPLAINT FOR LEGAL MALPRACTICE."

*Summary Judgment Standard*

**{¶12}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶13}   A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶14}   When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding*

*Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).  This means we review the matter de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶15}    In his assignment of error, appellant contends the trial court committed error in finding the statute of limitations barred his legal malpractice claim.  Appellant contends the statute of limitations began to run when the sentencing entry was filed in his criminal case.  Appellees argue the trial court's determination was correct and the statute of limitations began to run when the criminal indictment was filed against appellant.

{¶16}    Appellant's complaint is an action in legal malpractice.  To state a cause of action for legal malpractice in Ohio, a plaintiff must show: "(1) the attorney owed a duty or obligation to the plaintiff; (2) there was a breach of that duty or obligation and the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting damage or loss."  *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997).

{¶17}    With respect to a claim for legal malpractice, R.C. 2305.11(A) provides that "an action for legal malpractice against an attorney or law firm or legal professional association shall be commenced within one year after the cause of action accrued."  The determination of the date of accrual of a cause of action for legal malpractice is a question of law that is reviewed de novo on appeal.  *Bowman v. Tyack*, 10th Dist. Franklin No. 08AP-815, 2009-Ohio-1331; *Getch v. Jeffrey T. Orndorff Co., LPA*, 11th Dist. Geauga No. 2012-G-3120, 2013-Ohio-3973.

{¶18}    The Ohio Supreme Court has provided the following standard to determine when the one-year statute of limitations commences to run for legal malpractice actions:

Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever is later.

{¶19} *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

{¶20} The Court noted this standard is based upon the "discovery rule." Pursuant to the discovery rule, "constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations * * *." *Cicchini v. Streza*, 160 Ohio App.3d 189, 2005-Ohio-1492, 826 N.E.2d 379 (5th Dist.), citing *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992). The Court reasoned that utilizing the discovery rule places parties in legal malpractice actions on the same footing as parties in other types tort litigation. *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992). For example, "in an auto accident, additional time is not given to discover whether the tire was defective or learn the identity of the manufacturer." *Id.*

{¶21} Here, there is no dispute that the attorney-client relationship between appellant and appellees ended, at the latest, in March of 2021. Therefore, because the attorney-client relationship ended more than one year before appellant filed his legal malpractice claim, we must focus on the cognizable-event prong of the *Zimmie* test. Pursuant to Ohio Supreme Court precedent, the question that must be answered is: when

should appellant have known that he may have had an injury caused by appellees? *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989)*; Smith v. Barclay*, 10th Dist. Franklin No. 11AP-798, 2012-Ohio-5086.

**{¶22}** The Supreme Court listed several criteria to determine the date of an injury for purposes of determining when a cause of action accrues:  when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.  *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989); *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 285, 528 N.E.2d 941 (1988).

**{¶23}** Appellant contends both in his affidavit and appellate brief that he did not discover or realize the extent of the injury until his conviction.  However, the standard is not that of the subjective belief of each particular plaintiff.  Rather, in determining the date of a cognizable event, an objective and reasonable person standard is utilized.  "The focus is on what the client is or should have been aware of and how a reasonable person would react under the circumstances."  *Kinasz v. Dickson*, 8th Dist. Cuyahoga No. 106068, 2018-Ohio-1754, citing *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992); *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

**{¶24}** Appellant argues he did not incur damages until his conviction.  However, the Ohio Supreme Court has held that a plaintiff in a legal malpractice action may seek

damages in the form of fees incurred in connection with a subsequently-retained attorney's representation if those fees were incurred to rectify, or attempt to rectify, the damage the defendant-attorney caused the client. *Paterek v. Petersen & Ibold*, 118 Ohio St.3d 503, 2008-Ohio-2790, 890 N.E.2d 316; *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989); see also *Resor v. Dicke*, 3rd Dist. Auglaize No. 2-22-28, 2023-Ohio-4087. Appellant alleged in his complaint that, as a result of appellees' breach which resulted in criminal charges and convictions, he sustained economic loss, deprivation of liberty, mental anguish, and emotional and physical suffering. If appellees did breach their duty, at least some of the damages appellant alleges in his complaint were sustained regardless of whether he was convicted.

{¶25} Further, simply because appellant did not know the full extent of his damages or injury until the conviction does not prevent the triggering of the statute of limitations. The Ohio Supreme Court has specifically held that the statute of limitations begins to run even if the damages may not be completely ascertainable at the time. The Court stated, ""[we] do not believe that an injured person must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person" that a questionable legal practice may have occurred. *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989). As to appellant's argument that he personally did not know he suffered damages until his conviction, this argument is contradicted by the Ohio Supreme Court's holding that, "constructive knowledge of the facts rather than actual knowledge of their legal significance" begins the statute of limitations running. *Flowers v. Walker*, 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992).

{¶26} Appellant additionally contends he did not suffer any injury until he was actually convicted. However, in a legal malpractice claim, "injury" is not defined monetarily. *Id.* Rather, it is defined in terms of notice, and can be actual or constructive. *Id.* When the Tenth District specifically rejected the notion that a cognizable event occurs only upon a showing of actual injury or damages, the plaintiff in that case appealed to the Ohio Supreme Court, arguing a plaintiff in a legal malpractice claim is not put on notice of a need to pursue possible remedies against the defendant-attorney until the underlying trial court rules. *Smith v. Barclay*, 134 Ohio St.3d 1507, 2013-Ohio-1123, 984 N.E.2d 1101. The Ohio Supreme Court declined jurisdiction of the plaintiff's appeal. *Smith v. Barclay*, 134 Ohio St.3d 1507, 2013-Ohio-1123, 984 N.E.2d 1101.

{¶27} In his complaint, appellant alleged that, in March of 2020, Dudgeon sent the letter as to the legality of appellant's business and she advised appellant it was legal and permissible for him to engage in gaming operations. Appellant alleged "at all times pertinent to the action, [appellees] failed to exercise ordinary care in that they did not properly advise Plaintiff, Roe, as to the illegality of the gaming and casino operations" and that appellees breached their duty by lawyers "representing clients in gaming and casino operations which resulted in criminal charges and convictions." Further, that, as a proximate cause of the breach resulting in criminal charges and convictions, he suffered economic loss, mental anguish, emotion and physical suffering, and deprivation of liberty.

{¶28} In this case, the allegations in the complaint demonstrate appellant was "on notice" of appellees allegedly questionable legal practices when the indictment was filed in March of 2021. Appellant had to hire separate legal counsel at the time of the indictment. An injured party does not need to be aware of the full extent of his or her

injury before the "cognizable event" triggers the statute of limitations. *Zimmie; Smith v. Barclay*, 10th Dist. Franklin No. 11AP-798, 2012-Ohio-5086; *Krzywicki v. Gay*, 8th Dist. Cuyahoga No. 105039, 2017-Ohio-5584 (an individual need not be fully aware of the extent of his legal malpractice injuries to initiate the statute of limitations and knowledge of a potential problem starts the statute to run). Rather, "knowledge of a potential problem starts the statute to run, even when one does not know all the details." *Halliwell v. Bruner*, 8th Dist. Cuyahoga No. 76933 (Dec. 14, 2000). It was not necessary for appellant to know, with certainty, that appellees had committed a questionable legal practice. Knowledge of potential legal malpractice is enough to trigger the statute of limitations pursuant to *Zimmie*. When the indictment was filed, a reasonable and objective person would have knowledge of a potential problem with appellees' legal advice. Even if appellant learned more information regarding his legal malpractice claim at a later date, appellant should have been alerted to the fact that appellees may have committed an improper act and further investigation was needed at the time of the indictment.

{¶29} Appellant's denial of knowledge of injury until his conviction is "tested against the standard of whether in the exercise of reasonable diligence, the plaintiff should have known about the alleged malpractice earlier." *Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956 N.E.2d 85 (6th Dist. Lucas). "Reasonable diligence" entails "some effort by the client to dispel his confusion, doubt, or suspicions." *Id.* Here, the indictment put appellant on notice to investigate the facts and circumstances relevant to his malpractice claim in order to pursue his remedies.

{¶30} Appellant also contends a judicial determination is required before he was on notice of his potential claim against appellees. However, courts have consistently held

that a cause of action does not accrue when actual damages occur as the result of some judicial determination, but accrues when the client knew or should have known that a questionable legal practice may have occurred and a client might need to pursue remedies against his attorney. *Smith v. Barclay*, 10th Dist. Franklin No. 11AP-798, 2012-Ohio-5086 (cognizable event was not when court granted motion for summary judgment, but was when the motion for summary judgment was filed regardless of whether a questionable legal practice had been definitively established), appeal not accepted, *Smith v. Barclay*, 134 Ohio St.3d 1507, 2013-Ohio-1123, 984 N.E.2d 1101; *Szabo v. Goestch*, 8th Dist. Cuyahoga No. 99125, 2007-Ohio-1147 (client's claim not tolled until actual court decision); *Griggs v. Bookwalter,* 2nd Dist. Montgomery No. 21220, 2006-Ohio-5392 ("the Ohio Supreme Court has never held that a party must be aware or suffer the full extent of his injury before there is a cognizable event triggering the statute of limitations in a legal malpractice action"); *Sesto v. Perduk*, 9th Dist. Summit No. 23797, 2008-Ohio-664 (appellants argued they suffered no injury until their case was dismissed by the court, but court of appeals held the cognizable event was when the motion to dismiss was filed and client contacted a second attorney; held that if a judgment from the trial court was required to begin running the statute of limitations, the factual analysis called for in *Zimmie* would be unnecessary); *Jackson v. Greger*, 2nd Dist. Montgomery No. 23571, 2010-Ohio-3242 (appellant argued no damages until court ruled on collateral estoppel; court of appeals disagreed); *Lintner v. Nuckols*, 12th Dist. Preble No. CA2003-10-020, 2004-Ohio-3348 (a letter was a cognizable event rather than the trial court's determination that the appellants had no coverage under insurance policies); *Taylor v. Oglesby*, 6th Dist. Lucas No. L-05-1064, 2006-Ohio-1225 (cognizable event was when criminal defendant filed motion to

reopen their criminal case, not when the trial court granted the motion to reopen); *Gullatte v. Rion*, 145 Ohio App.3d 620, 763 N.E.2d 1215 (2nd Dist. Montgomery 2000) (cognizable event was when appellant filed his motion for relief from judgment, not when the motion was ruled on); *Smith v. Candiello*, 6th Dist. Lucas No. L-15-1125, 2016-Ohio-844 (cognizable event was when criminal defendant filed motion to vacate rather than date conviction was vacated by judgment entry); *McGlothin v. Schad*, 194 Ohio App.3d 669, 2011-Ohio-3011, 957 N.E.2d 810 (12th Dist. Warren) (cognizable event was criminal defendant's filing of motion for reopening, not date of judgment entry); *Getch v. Jeffrey T. Orndorff Co., LPA*, 11th Dist. Geauga No. 2012-G-3120, 2013-Ohio-3973 (rejecting appellant's argument that cognizable event was the date when the trial court granted the motion to withdraw); *Cotterman v. Arnebeck*, 10th Dist. Franklin No. 11AP-687, 2012-Ohio-4302 (cognizable event is not dependent upon a judicial determination).

{¶31}  Courts have rationalized that requiring a judicial determination to be the "cognizable event" would extend the statute of limitations indefinitely, since a client could argue there was no injury until they exhausted the last possible resort for appeal. *Smith v. Barclay*, 10th Dist. Franklin No. 11AP-798, 2012-Ohio-5086.  In *Zimmie*, the Court commented that since the appellant was no longer represented by the firm he accused of malpractice, requiring him to wait until the underlying case was resolved would not interfere with his current attorney-client relationship, and the appellant could have requested a stay in the legal malpractice case until there was final judgment in the underling case. *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

{¶32} The factual scenario in this case is different from cases in which a criminal defendant alleges the attorney representing him in a criminal case breaches his duty during this representation. When the cause of action clearly goes to the representation provided or actions taken by the attorney during the pendency of the criminal case, the cause of action accrues, at the latest, when the criminal defendant is convicted of the charge. *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509 (since client's allegations of negligence pertained to actions taken by his attorney during the pendency of the criminal case, the date of the conviction is the date the client should have known of questionable legal practice); *Collins v. Morgan*, 8th Dist. Cuyahoga No. 68680, 1995 WL 680923 (Nov. 16, 1995); *Mackey v. Luskin*, 8th Dist. Cuyahoga No. 88874, 2007-Ohio-5844 (cognizable event for attorneys defending defendant in homicide case was conviction date, not date appeals court issued its opinion); *Caston v. Bailey*, 6th Dist. Erie No. E-03-008, 2003-Ohio-4727 (conviction is cognizable event for defendant who alleges his criminal trial counsel committed malpractice during trial). However, in this unique factual scenario, the cause of action does not pertain to the representation or actions taken by the attorney during the pendency of the criminal case. It pertains to representation and actions taken prior to appellant's arrest, indictment, and conviction.

{¶33} Appellant cites the case of *Burks v. Peck, Shaffer & Williams*, in support of his argument. 109 Ohio App.3d 1, 671 N.E.2d 1023 (8th Dist. 1996). In *Burks*, the client brought a legal malpractice action stating the attorney failed to advise him of the conflict between state bond law and a federal subsidy payment scheme, which led to the client's indictment. *Id.* The attorneys in the case argued the cognizable event occurred earlier than the indictment date because the legal advice was rendered years earlier, and the

client was aware of the conflict in law years prior to the indictment. *Id.* The Court of Appeals reversed the trial court's dismissal of the claim, finding there was an issue of fact as to whether the client knew or should have known the injury (the indictment) was related to his attorneys' act or non-act prior to the indictment date.

{¶34} We first note that one of the primary reasons that the Eighth District in the *Burks* case reversed the case is because the court felt the issue "was more appropriately tested using a motion for summary judgment instead of a motion to dismiss" as was filed in *Burks*. *Id.* In this case, the issue was decided on a motion for summary judgment rather than a motion to dismiss. Additionally, we find the *Burks* case is factually different from this case, and the *Burks* court did not hold that a conviction was required for injury as opposed to an indictment. Rather, Burks' complaint was filed within one year of his indictment. The Eighth District stated the indictment itself was the "injury." The question was whether the cognizable event occurred prior to the indictment. The trial court in this case found the cognizable event was the indictment, not the raid or the arrest or other action prior to the indictment. Accordingly, we find the *Burks* case distinguishable from the instant case.

{¶35} We agree with the trial court that the indictment and need to hire separate criminal counsel in March of 2021 would put an objective and reasonable person on notice that the prior attorney's advice may not be correct and prompt an investigation. We find the trial court did not commit error in determining the cognizable event that triggered the accrual of appellant's cause of action was the indictment. Because appellant's cause of action accrued more than one year prior to the date upon which he commenced the action

for legal malpractice, his cause of action is time-barred.  Accordingly, the trial court correctly granted summary judgment in favor of appellees.

{¶36}    Based on the foregoing, appellant's assignment of error is overruled.  The May 23, 2023 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Delaney, P.J., and

Baldwin, J., concur;

King, J., concurs

separately

*King, J. concurs separately*,

{¶ 37} The majority opinion is thorough, and it reaches the right conclusion as to when a legal malpractice claim accrues in most cases. But I find this case is distinguishable from many of those cited in the court's opinion. Here, Appellant claimed the Steubenville Law Director informed his former legal counsel in a letter that the proposed gaming operations were illegal and that counsel should inform Appellant of this conclusion. Appellant claims that he was never informed, and only gained knowledge of the May 28, 2020 letter after criminal proceedings against him began. Appellee does not appear to deny Appellant's claim.

{¶ 38} In *Perkins v. Falke & Dunphy, L.L.C.*, 2nd Montgomery No. 25162, 2012-Ohio-5799, the Second District addressed whether the doctrines of equitable tolling via fraudulent concealment and equitable estoppel applied so as to extend the statute of limitations in a legal malpractice claim. *Id.* ¶ 10-12. Although the court in *Perkins* held the statute was not tolled, the facts here suggest a different outcome.

{¶ 39} Here, the apparent concealment of the letter was arguably the proximate cause that led to Appellant's arrest and later conviction. And there is no doubt the harm Appellant suffered as a result of that concealment was great in the loss of reputation, property, and liberty. Moreover, the former legal counsel's alleged wrongful actions put Appellant in a position where he would have to simultaneously defend himself in a criminal proceeding and litigate a legal malpractice claim. This is the kind of "compelling case that would justify a departure from established procedure." *Id.* ¶ 12.

{¶ 40} Although Appellant raised the concealment of the letter in his brief, it was in support of his argument that the legal malpractice action accrued at conviction rather than

an argument for any type of equitable tolling. In light of the arguments before the court, I

therefore concur in judgment only.