DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Samuel and Jacqueline Sesto ("the Sestos"), appeal from the decision of the Summit County Court of Common Pleas which granted summary judgment in favor of Appellees on the Sestos' claim for legal malpractice. This Court affirms.
 I. {¶ 2} On January 16, 2006, the Sestos filed suit against Appellees, David C. Perduk, Richard Martin, and Richard Martin, LPA. In their complaint, the Sestos alleged that Perduk and Martin committed legal malpractice while representing them in a tort action. On February 16, 2007, the defendants moved *Page 2 
for summary judgment, alleging that the Sestos' claim was barred by the statute of limitations. The Sestos' responded in opposition. On June 22, 2007, the trial court determined that the action was barred by the statute of limitations and granted the motion for summary judgment. The Sestos' timely appealed the trial court's judgment, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL JUDGE ERRED, AS A MATTER OF LAW, IN GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF[S]-APPELLANTS ON THE BASIS OF THE STATUTE OF LIMITATIONS."
 {¶ 3} In their sole assignment of error, the Sestos argue that the trial court erred in granting summary judgment. Specifically, the Sestos assert that their legal malpractice claim was timely commenced. This Court disagrees.
 {¶ 4} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 5} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is *Page 3 
made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 6} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 7} The time within which a party must bring a cause of action for legal malpractice is governed by R.C. 2305.11(A), which states that a legal malpractice claim "shall be commenced within one year after the cause of action accrued[.]" In Zimmie v. Calfee, Halter Griswold
(1989), 43 Ohio St.3d 54, the Supreme Court established a two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice. In Zimmie, the Court stated as follows:
 "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that *Page 4 
his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie, 43 Ohio St.3d at syllabus.
Thus, a "cognizable event" may occur during the course of the attorney-client relationship. Id. at 58. In these cases, the statute of limitations for a legal malpractice claim commences to run when the attorney-client relationship has terminated. Id.
 {¶ 8} In Omni-Food Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385, paragraph two of the syllabus, the Supreme Court of Ohio directed courts to assess the particular facts of a legal malpractice claim and make the following determinations regarding the accrual date for such a claim:
 "when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury."
 {¶ 9} In addition, the Supreme Court has made it clear, that, in an assessment of the actual occurrence and date of a cognizable event, an objective reasonable person standard of review, and not a subjective standard, is to be employed. Scovern v. Farris (Feb. 21, 1996), 9th Dist. 17352, at *3, citing Zimmie, 43 Ohio St.3d at syllabus. This test provides that "it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a *Page 5 
reasonable person that improper legal work has taken place." (Internal edits omitted.) Scovern at *3, quoting Zimmie, 43 Ohio St.3d at 58.
 {¶ 10} The parties do not dispute the underlying facts of this matter. Samuel Sesto was injured on October 16, 2001, while working for Reuther Mold Mfg. Co. The Sestos retained Perduk and Martin to pursue an employer intentional tort claim against Reuther Mold and a product liability case against Haas Automation. On October 15, 2002, Perduk and Martin filed suit on the Sestos' behalf. Perduk and Martin filed a notice of voluntary dismissal of that suit on September 5, 2003. The suit was refiled on September 1, 2004. On October 4, 2004, Haas Automation moved to dismiss the complaint on the basis that it was not filed within the statute of limitations. On October 25, 2004, Reuther Mold moved for summary judgment under the same theory.
 {¶ 11} In December of 2004, the Sestos contacted Attorney James P. Boyle to see why no action had been taken on their pending claims. Perduk contacted Boyle and asked him to take over as counsel for the Sestos. Boyle declined to represent the Sestos in the pending action. On January 3, 2005, the Sestos wrote a letter to Perduk and Martin, terminating their attorney-client relationship. On March 29, 2005, the trial court dismissed the Sestos' claims. On March 28, 2006, the trial court sua sponte reinstated the Sestos' claims, but subsequently re-dismissed those claims on October 13, 2006. Meanwhile, the Sestos filed this malpractice action on January 18, 2006. *Page 6 
 {¶ 12} It is undisputed that the Sestos filed their action more than one year after they ended their attorney-client relationship with Perduk and Martin on January 3, 2005. This Court, therefore, must determine when the "cognizable event" occurred which triggered the statute of limitations. In support of their argument, the Sestos aver that their cause of action for malpractice did not accrue until March 29, 2005, when their tort claims were dismissed. Specifically, the Sestos claim that they suffered no actual injury from their attorneys' actions until their claims were dismissed. We disagree.
 {¶ 13} Contrary to the Sestos' assertion, "an injured person does not need to know the full extent of the injury for an event to be cognizable. As the [Zimmie] court explained, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." (Quotations omitted.) Scovern, supra, at *3. Moreover, in a legal malpractice claim, "`[i]njury' is not defined monetarily; rather, it is defined in terms of notice." Spencer v. McGill (1993),87 Ohio App.3d 267, 278. "The fact that the appellants were not aware of the monetary amount of their injury, pending the outcome of [their] lawsuit * * *, does not toll the running on the statute of limitations." Mauro v.Valenti (May 11, 1988), 9th Dist. No. 13372, at *2. The Sestos' assertion that a judgment from the trial court was required to begin the running of the statute of limitations "would render the factual analysis called for in Zimmie and Hershberger unnecessary." DiSabato v. Tyack Associates Co. *Page 7 
(Sept. 14, 1999), 10th Dist. No. 98AP-1282, at *5 (rejecting the argument that a judicial determination is necessary to start the running of the statute of limitations for a legal malpractice claim).
 {¶ 14} Having rejected the Sestos' argument that their claim did not accrue until their tort suit was dismissed, we must determine the date that the claim accrued. We find that as a matter of law, the latest the Sestos' claim could have accrued was December of 2004. In October 2004, both defendants in the tort suit moved to dismiss the matter on the grounds of the statute of limitations. In December of 2004, the Sestos contacted a second attorney, Boyle, to determine why their tort suit was not proceeding. At that time, an examination of the filings would have revealed the error in the legal work conducted by Perduk and Martin. We reached a similar conclusion in Mauro. In Mauro, we noted as follows:
 "At the time of the earlier lawsuit against Nell Capozzoli, appellants had retained an attorney other than C. Ray Valenti to enforce the declaration of trust. At that point, appellants' attorney would have examined the declaration of trust and considered its enforceability. Certainly, appellants should have been put on notice of the need for further inquiry as to the cause of any such defects in the declaration of trust. We hold that the appellants should have become aware of Valenti's malpractice, if any, in 1981 when appellants' attorney was examining the declaration of trust, as well as the other documents, in preparation of the lawsuit." Mauro, supra, at *2.
Similar to the plaintiffs in Mauro, a reasonable person would have been placed on notice of the alleged malpractice herein once both defendants moved to dismiss the action and a second attorney was contacted to check on the status of that action. See, also, Disabato, supra, at *4 (determining that a "summary judgment *Page 8 
motion was a cognizable event sufficient to put plaintiff on notice that a questionable legal practice may have occurred while defendants were representing him").
 {¶ 15} Having determined that the Sestos' claim accrued in December of 2004, it follows that their filing in January of 2006 was not timely commenced. The trial court, therefore, did not err in granting summary judgment against the Sestos. The Sestos' sole assignment of error lacks merit.
 III. {¶ 16} The Sestos' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 9 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Carr, P. J. Dickinson, J., concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1